UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
-----------------------------------------------------X
ANIMATRON, INC.,                          )
          Plaintiff,                      )          Civil Action No.
                                          )
v.                                        )
                                          )          COMPLAINT AND DEMAND
EASYHI BVI AND                            )          FOR JURY TRIAL
EASYHI Ltd.,                              )
          Defendants.                     )
                                          )
-----------------------------------------------------X
```

The plaintiff, Animatron, Inc. ("Animatron"), for its complaint against the defendants,

EasyHi BVI and EasyHi Ltd. ("Slidely"), states that:

## NATURE OF THE ACTION

1.       This is an action for declaratory judgment (i) arising under the United States

Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, (the "Copyright Act"); (ii) to declare the

defendants do not have sufficient basis to support a breach of agreement claim; (iii) arising under

the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*; (iv) to declare the defendants do not

have sufficient basis to support a tortious interference with business relationship claim; and (v)

pursuant to 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act).  This is also an action

for defamation, unfair competition, and unfair and deceptive acts or practices declared unlawful

under M.G.L. ch. 93A, §1, *et seq.*

## JURISDICTION AND VENUE

2.       This Court has jurisdiction of the subject matter of this action under 17. U.S.C.

§ 101, *et seq.*, 28 U.S.C. §§ 1331, 1338, 2201, and 2202, 18 U.S.C. § 1836, *et seq.*, and

principles of supplemental and ancillary jurisdiction.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1391(c).

THE PARTIES

4.      The plaintiff, Animatron, Inc. ("Animatron"), is a Massachusetts corporation with a place of business at 2 Seaport Lane, Suite 8C, 8th Floor, Seaport East, Boston, Massachusetts 02210.  Animatron is the successor-in-interest to Animatron, LLC.  Animatron, LLC was a limited liability company, organized under the laws of the Commonwealth of Massachusetts, dissolved on February 1, 2017.  "Animatron" hereinafter refers collectively to Animatron, Inc. and its predecessor, Animatron, LLC.

5.      On information and belief, the defendants EasyHi BVI is a corporation organized under the laws of British Virgin Islands with a place of business at c/o Blenheim Trust (Bvi) Limited, Road Town, Virgin Islands, British.

6.      On information and belief, the defendants EasyHi Ltd. is a corporation organized under the laws of the State of Israel, with a place of business at 14a Raul Wallenberg Street Tel Aviv, 69719.

7.      "Slidely" is a name used by one or both of the defendants, and, hereinafter, the defendants are collectively referred to as "defendants" or "Slidely."

FACTUAL BACKGROUND

ANIMATRON PRODUCT DEVELOPMENT

8.      Animatron is in the business of developing and providing software-based tools for creating and editing works of video and animation.  Animatron was founded on May 28, 2011, by Dmitry Skavish.

9.      On or about March 1, 2014, Animatron launched its first product, initially titled "Animatron" (later renamed to "Studio").  Studio enables users to create animations and connect

with other users, through an online community, to share their work and collaborate on their animated creations.  Animatron began developing Studio on or about June, 2011, and worked on the development of Studio continuously from that date until the launch of Studio.

10.     On or about September 20, 2016, Animatron began developing a product, which became a product known as "Wave."  Wave is a software program that assists a user in creating short videos, with particular applications in marketing, promotional, and social media. Animatron hereinafter uses "Wave" to refer to this product, while in development and after its launch.

11.     In developing Wave, Animatron employed a team of software engineers and researchers to evaluate the video tool market, determine consumer demand for features in video editing software, and develop a software product that meets consumer demand while providing several advantages over previous consumer products.

12.     Animatron's Wave provides an intuitive interface that empowers a user to create video content.  In contrast to previous consumer products, Wave provides an extensive library of video clips, a powerful editing tools to customize the video content, and streamlined formatting tools to quickly present the video in a variety of media formats.

13.     Individuals working for Animatron visited competitors' websites and used the products for their intended purpose, which included making videos.  The purpose of the visits included, for example, to determine the market niche for the Wave product Animatron intended to develop.

14.     Based on visits to competitor websites, Animatron determined that there was a need in the market for a product that was superior to those offered by its competitors and that the Wave product it intended to develop would fill the need in the market.

15.     A website accessed by individuals working for Animatron was a Slidely website, where the defendants' Promo platform is publicly available.

16.     Individuals working for Animatron only accessed publicly available material at the Slidely's website and did not access any source code of Slidely.

17.     Individuals working for Animatron did not gain access to any trade secrets of Slidely.

18.     On October 6, 2015, Animatron joined the MIT Enterprise Forum.  The MIT Enterprise Forum is an organization affiliated with the Massachusetts Institute of Technology (MIT), and serves to promote and provide guidance to small companies ("startups") in technology-related fields.  In particular, the MIT Enterprise Forum matches startups to mentors, who provide guidance to the startups regarding business development, technology, marketing, and intellectual property.  The MIT Enterprise Forum also promotes their member startups through various networking and "showcase" events.

19.     On March 23, 2017, Animatron released a preliminary ("beta") version of Wave. The product became publicly available through Animatron's website at https://www.animatron.com/wave/landing.  Following this release, Animatron has continued to develop and improve Wave, and plans to release a final version of Wave in the near future.

20.     As a member startup of the MIT Enterprise Forum, Animatron was selected to be featured at the event "Startup Spotlight 2017," held on June 14, 2017 in Boston, Massachusetts. The MIT Enterprise Forum assembled a commission to consider all applicants to the event.  Out of 282 applicants, Animatron was one of just 30 that were selected for this event.  During the event, Animatron would have had the opportunity to demonstrate its product, Wave, and to network with prospective customers and investors.

<u>THE DEFENDANTS' ASSERTION OF INVALID CLAIMS</u>

21.     The defendants Slidely provide a product called Promo.  Promo is a video-editing tool that enables users to create short video clips for promotional and advertising applications.

22.     On June 8, 2017, Animatron received by email and thereafter by Federal Express, a letter and with one attachment and then a letter with two attachments from Attorney Veronica Mullally Muñoz of the law firm Pearl Cohen in New York City.  Attached hereto and made a part hereof as Exhibit A is a true and accurate copy of the letter and the two attachments.

23.      In the letter ("Exhibit A"), the defendants Slidely assert several claims against Animatron, referred to here as:  1) copyright infringement, 2) breach of agreement, 3) trade secret misappropriation, and 4) tortious interference with business relationships.

24.     In its claim of copyright infringement, Slidely alleged that Animatron's product, Wave, infringes the copyrights of Slidely's product, Promo.

25.     Despite extensive content on the Promo and Wave websites, Ms. Muñoz's letter identifies only two statements on the Wave website that are alleged to be "copied from Promo": 1) Promo:  "Easily Create Beautiful Marketing Videos"; Wave: "Make Beautiful Marketing Videos" and  2) Promo:  "Create videos in less than 5 minutes"; Wave: "Make videos in less than 5 minutes."

26.     The allegation of copying does not identify a protectable right, is *de minimis*, and does not support any claim for relief.

27.     Exhibit A further alleges that in "Background Videos of Landing Page" "Slidely uses background videos on Promo landing page" and "Wave has been using the exact same background videos as used on Promo pages."

28.     A limited number of vendors supply videos of the type that are incorporated into the Promo and Wave products.  On information and belief, Animatron and the defendants obtain videos, which may be referred to as stock videos, from at least one vendor in common.  As a result, Promo and Wave may have some videos in common as a result of Animatron lawfully obtaining the same videos from the same vendor as the defendants.

29.     The appearance of lawfully obtained videos on Animatron's website does not support a claim for copyright infringement.

30.     Exhibit A alleges "Slidely's copyrighted Promo is subject to express Terms of Service, which provide (pertinent part; emphasis added):

> Promo and its licensors own the Site, including all worldwide intellectual property rights in the Site and Services, and the trademarks, service marks, and logos contained therein. **Except as expressly permitted herein, you may not copy, further develop, reproduce, republish, modify, alter download, post, broadcast, transmit or otherwise use the Site, Content or the Services.** You will not remove, alter or conceal any copyright, trademark, service mark or other proprietary rights notices incorporated in the Site, Content or Services. All trademarks are trademarks or registered trademarks of their respective owners. Nothing in these Terms grants you any right to use any trademark, service mark, logo, or trade name of EasyHi, Promo or any third party.

(emphasis in original)."

31.     Slidely, in Exhibit A asserts that Animatron breached the agreement in the Terms of Service.

32.     Individuals working for Animatron visited competitors' websites and used the products for their intended purpose, which included making videos.  The purpose of the visits included, for example, to determine the market niche for the Wave product Animatron intended to develop.

33.     Animatron and individuals working for Animatron did not violate the Terms of Service for use of Promo.

34.     Slidely, in Exhibit A, summarizes The Defense of Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(3)(A)(i) ("DTSA"), stating that under the DTSA, "'[a]ctual or threatened misappropriation' may be enjoined and the Court may require 'affirmative actions to be taken to protect trade secrets.'"

35.     Exhibit A further discusses New York law, alleging that it is similar to the DTSA.

36.     Exhibit A alleges that Animatron acquired Slidely's "confidential information by breaching the Terms of Service for the Promo video platform" and Exhibit A alleges, "Animatron thus is liable for trade secret misappropriation.

37.     Quite simply, information accessible publicly throughout the world on the internet is not "confidential information."

38.     Any individual can go on the Promo website and create an account freely and without an agreement of confidentiality or secrecy.

39.     The content accessible to users who create an account on Promo is publicly available and does not constitute a trade secret.

40.     Therefore, content accessed by Animatron on Slidely's website as alleged in Exhibit A is not secret information.

41.     Animatron did not have access to and did not engage in any activity to obtain access to any trade secrets owned by Slidely, and Exhibit A does not state any facts to the contrary.

42.     In Exhibit A, Slidely asserts that Animatron tortiously interfered with business relationships of Slidely.

43.     In support of this allegation, Exhibit A states, "Animatron is aware of these relationships" referring generally to Slidely's business relationships with its customers for Promo.

44.     Animatron does not have access to information concerning any Slidely business relationships other than information apparent from Promo's presence on the internet.

45.     The only action that is alleged in support of the defendants' tortious interference allegation is Animatron's legitimate competition with Slidely by offering the Wave product as a beta product.

46.     Animatron did not tortuously interfere with Slidely's business relationships when it went into competition with Slidely.

47.     Slidely does not provide adequate support for a claim for tortious interference.

48.     In the attachments in Exhibit A, Slidely makes allegations concerning certain elements of Wave.

49.     Exhibit A states, "we refer you to the attached document … outlining some of the blatant similarities between Promo, released in 2016, and Wave, including (i) editor layout, (ii) font color scheme; (iii) text positioning; (iv) logo upload; (v) text size scheme; and (vi) editor menu."

50.     In the attachments accompanying Slidely's letter, Slidely depicts three elements of Promo and Wave with subtext on a page titled "Editor layout": 1) "Left side navigation," 2) "3 Slides default texts," and 3) "Right side formatting bar."

51.     "Left side navigation" and a "right side formatting bar" are common features to interfaces of software tools, and can be found in products by Microsoft, Google, Apple that pre-date Promo.  Further, Wave's left-side navigation menu and right side formatting bar are

substantially different from those of Promo, including the appearance of its buttons, the function of those buttons, and the formatting and editing options presented to the user.

52.     Wave does not provide "3 slides default texts" as Slidely attempts to show in the attachment in Exhibit A.  Instead, it provides a bottom-side timeline showing a sequence of video.  When a user begins a video project, a single video is shown in the timeline by default. . This timeline is dynamic, and the number of panes in the timeline changes based on how the user adds or subtracts video within a video project.  Wave provides the user the flexibility to manipulate the number of panes showing so that any number of panes can appear in the timeline. In Exhibit A, Slidely manipulated the timeline away from the default settings so that it shows 3 panes, in order to have the Wave product depicted in its comparison appear like the three panes shown at the bottom of Promo.

53.     In the attachments accompanying Slidely's letter, on a page titled "Font color scheme" there is a portion of Wave and a portion that is apparently from Promo.  Font color schemes used in Promo and Wave are of common layout design used for selecting font color in several editing tools that pre-date Promo and the Promo and Wave font color scheme are not substantially similar.

54.     In the attachments accompanying Slidely's letter, on a page titled "Text positioning" there is a portion of Wave and a portion apparently of Promo.  "Text positioning" selectors used in Wave and Promo are of common layout design for positioning text in several editing tools that pre-date Promo and the Promo and Wave text positioning are not substantially similar.

55.     In the attachments accompanying Slidely's letter, on a page titled "Logo upload" there is a portion of Wave and a portion apparently of Promo.  The logo uploads shown are

similar to graphics that have been used for illustrating a missing logo in applications that pre-date Promo and the Promo and Wave depictions are not substantially similar to one another. Further, the Wave logo upload depicted by Promo in the attachment is one of multiple configurations. Slidely used the flexibility of Wave to select the position of its "logo upload" to be similar to the logo upload as it appears in Promo.

56.     In the attachments accompanying Slidely's letter, on a page titled "Text size scheme" there is a portion of Wave and a portion apparently of Promo. Such a scheme is commonly found in several text editing tools that pre-date Promo and the Wave and Promo text size scheme are not substantially similar.

57.     In the attachments accompanying Slidely's letter, on a page titled "Editor Menu" there is a portion of Wave and a portion apparently of Promo. The depictions show that the Wave and Promo editor menus are significantly different, for example in graphics, positioning, and wording.

58.     At the conclusion of Exhibit A, Slidely demanded that Animatron "immediately cease and desist" all acts relating to the claims recited above in the letter. Slidely further demanded that Animatron "immediately and permanently cease all marketing, promotion, offer for sale and/or sale" of its Wave product.

DEFENDANTS' DEFAMATION OF ANIMATRON

59.     On June 11, 2017, Animatron received an email from MIT transmitting an email that MIT received from Robert Cohen, who identifies himself in his email as the Executive Chairman of Slidely, stating that Animatron had "stolen our copyright material in making its Wave product" and enclosing the aforementioned cease and desist letter (Exhibit A to this complaint). Mr. Cohen continued in his email by stating that "Animatron has willfully and

blatantly stolen our product and – despite this – is now trying to use a premier event such as MITEF to portray themselves as innovators." The MIT email, which includes the Slidely email, is attached hereto as Exhibit B.

60.     As a direct and proximate result of the email received from Slidely, MIT notified Animatron in its June 11 email, Exhibit B, that it was cancelling Animatron's participation in the Startup Spotlight 2017 held on June 14, 2017.

61.     Slidely's email to MIT contains false statements.

62.     MIT cancelled Animatron's participation in the Spotlight based on false statements made by Slidely to MIT.

63.     Animatron has been severely damaged by the false statements to MIT that were made by Slidely, including but not limited to being cancelled from the Spotlight program, which the defendants admit to be a "premier event."

COUNT I

(Declaratory Judgment of Noninfringement of Copyrights)

64.     Animatron repeats and realleges paragraphs 1 through 63 of this complaint as if they were fully set forth.

65.     Contrary to the assertions in Exhibit A, Animatron did not infringe any protectable copyright of Slidely. The elements of Wave identified by Slidely, alone and in combination with other elements of Wave, are not substantially similar to Promo and do not infringe any protectable copyright in Promo.

66.     In view of the parties' conflicting positions, an actual and justifiable controversy exists over the parties' respective rights and positions.

67.     Without a prompt determination that Wave does not infringe any protectable copyrights of Slidely, Animatron cannot know with any certainty whether it is exposing itself to liability if it does not agree to Slidely's demands.

68.     A declaratory judgment in this case would serve a useful purpose in clarifying and settling the respective legal rights and obligations of the parties, and it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to this proceeding, and Animatron requests the Court enter an Order of noninfringement for Animatron.

<u>COUNT II</u>

(Declaratory Judgment of Non-breach of Agreement)

69.     Animatron repeats and realleges paragraphs 1 through 68 of this complaint as if they were fully set forth.

70.     Contrary to the defendants' assertions, Animatron has not violated the Terms of Services.

71.     In view of the parties' conflicting positions, an actual and justifiable controversy exists over the parties' respective rights and positions.

72.     Without a prompt determination that Animatron did not breach an agreement with Slidely, Animatron cannot know with any certainty whether it is exposing itself to liability if it does not agree to Slidely's demands.

73.     A declaratory judgment in this case would serve a useful purpose in clarifying and settling the respective legal rights and obligations of the parties, and it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to this proceeding, and Animatron requests the Court enter an Order of Non-breach of Agreement for Animatron.

<u>COUNT III</u>

(Declaratory Judgment No Trade Secret Misappropriation)

74.     Animatron repeats and realleges paragraphs 1 through 73 of this complaint as if they were fully set forth.

75.     The defendants do not state a claim in Exhibit A for relief under the DTSA.

76.     Even if New York law were to apply, which Animatron disputes, because the defendants admit it is similar to the DTSA, the defendants similarly do not state a claim for relief under New York law.

77.     In view of the parties' conflicting positions, an actual and justifiable controversy exists over the parties' respective rights and positions.

78.     Without a prompt determination that Animatron did not misappropriate trade secrets of Slidely, Animatron cannot know with any certainty whether it is exposing itself to liability if it does not agree to Slidely's demands.

79.     A declaratory judgment in this case would serve a useful purpose in clarifying and settling the respective legal rights and obligations of the parties, and it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to this proceeding, and Animatron requests the Court enter an Order of No Trade Secret Misappropriation for Animatron.

<u>COUNT IV</u>

(Declaratory Judgment of No Tortious Interference With Business Relationships)

80.     ANIMATRON repeats and realleges paragraphs 1 through 79 of this complaint as if they were fully set forth.

81.     Animatron did not tortiously interfere with Slidely's business relationships in violation of any rights of the defendants.

82.     In view of the parties' conflicting positions, an actual and justifiable controversy exists over the parties' respective rights and positions.

83.     Without a prompt determination that Animatron did not tortiously interfere with business relationships of Slidely, Animatron cannot know with any certainty whether it is exposing itself to liability if it does not agree to Slidely's demands.

84.     A declaratory judgment in this case would serve a useful purpose in clarifying and settling the respective legal rights and obligations of the parties, and it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to this proceeding, and Animatron requests the Court enter an Order of No Tortious Interference With Business Relationships for Animatron.

## COUNT V

### (Defamation Massachusetts Common Law)

85.     Animatron repeats and realleges paragraphs 1 through 84 of this complaint as if they were fully set forth.

86.     In its email to MIT (Exhibit B), Slidely defamed Animatron.

87.     Animatron has been and is being severely damaged by the defamatory statements Slidely made to MIT, including but not limited to being cancelled from the Spotlight program.

88.     Animatron has a reasonable apprehension that the defendants will engage in further defamatory actions, if not enjoined.

89.     As a result of the defendants' conduct, the defendants havecaused, and, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage, and injury to Animatron.

## COUNT VI

### (Unfair Competition Massachusetts Common Law)

90.     Animatron repeats and realleges paragraphs 1 through 89 of this complaint as if they were fully set forth.

91.     Slidely's actions, including its defamatory written communication to MIT, constitute unlawful unfair competition.

92.     Animatron has been and is being damaged as a result of the defendant's unfair competition.

93.     As a result of the defendants' conduct, the defendants have caused, and, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage, and injury to the public and to Animatron.

## COUNT VII

### (Massachusetts General Laws ch. 93A)

94.     Animatron repeats and realleges paragraphs 1 through 93 of this complaint as if they were fully set forth.

95.     The conduct of the Slidely constitutes unfair methods of competition or unfair or deceptive acts and practices in the conduct of a trade or business in violation of Massachusetts General Laws ch. 93A, §2, and regulations promulgated thereunder.

96.     The conduct of the defendants was and is willful or knowing and in violation of Massachusetts General Laws ch. 93A, §2, and the regulations promulgated thereunder.

97.     As a direct and proximate result of the conduct of the defendants in violation of

M.G.L. ch. 93A, §2, its unfair and deceptive acts and practices, and its willful or knowing

violations of M.G.L. ch. 93A, §2, and the regulations promulgated thereunder, Animatron has

been and is being severely damaged.

98.     Animatron has suffered and will continue to suffer irreparable injury due to the

above described activities of the defendants if the defendants are not preliminarily and

permanently enjoined.

WHEREFORE, the plaintiff, Animatron, Inc., demands judgment against EasyHi BVI

and EasyHi Ltd.:

A.     Declaring noninfringement of alleged copyright(s) asserted against Animatron by

the defendants, Slidely;

B.     Declaring non-breach of agreement between Animatron and Slidely;

C.     Declaring no trade secret misappropriation by Animatron of any trade secrets

owned by Slidely;

D.     Declaring no tortious interference by Animatron of any business relationships of

Slidely;

E.     Preliminarily and permanently enjoining the defendant, Slidely, from making

further defamatory statements about Animatron;

F.     Ordering and directing the defendants to notify MIT that it withdraws its

statements contained in Exhibit B and requesting that MIT include Animatron in a future Startup

Spotlight as soon as possible.

G.      Determining and awarding Animatron its damages resulting from the defendant's defamatory statements, as alleged in Count V of the complaint, plus interest, costs, and attorneys' fees;

H.      Preliminarily and permanently enjoining the defendant from engaging in unfair methods of competition with Animatron;

I.      Determining and awarding Animatron its damages resulting from the defendant's unfair competition with the plaintiff, as alleged in Count VI of the complaint, plus interest, costs, and attorneys' fees;

J.      Entering judgment that the defendant has committed unfair and deceptive acts or practices declared unlawful under Massachusetts General Laws ch. 93A, as alleged in Count VII;

K.      Determining and awarding Animatron its damages resulting from the defendant's violation of Massachusetts General Laws ch. 93A, as alleged in Count VII of the complaint, plus interest, costs, and attorneys' fees;

L.      Determining that the defendant violated Massachusetts General Laws ch. 93A, §2, as alleged in Count VII, that the damages be trebled pursuant to Massachusetts General Laws ch. 93A, §11, and that Animatron be awarded its attorneys' fees in connection with this action;

M.      Preliminarily and permanently enjoining the defendant from engaging in unfair and deceptive acts in violation of Massachusetts General Laws ch. 93A as alleged in Count VII;

N.      Determining that defendant's actions in infringing Animatron's rights and in engaging in unfair competition were willful and increasing the award of damages to Animatron as a result of those willful actions; and

O.      Granting such other and further relief as this Court may deem just and proper.

THE PLAINTIFF DEMANDS A TRIAL BY JURY.

ANIMATRON, INC.
By its attorneys,

/s/  Susan G. L. Glovsky
Susan G. L. Glovsky  BBO# 195880
susan.glovsky@hbsr.com
Benjamin J. Sparrow  BBO# 667731
ben.sparrow@hbsr.com
Hamilton, Brook, Smith & Reynolds, P.C.
155 Seaport Blvd.
Boston, Massachusetts  02210
Telephone:  617-607-5900
Fax:  978-341-0136

Dated: June 15, 2017

2576440.v1